## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

GEORGE C.[1]                                               Case No. 1:20-cv-607

            Plaintiff,                                  Dlott, J.

v.                                                     Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

            Defendants.

## REPORT AND RECOMMENDATION

Plaintiff filed this Social Security appeal in order to challenge the Defendant's determination that he is not disabled. Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability should be **AFFIRMED**, because it is supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on March 10, 2017, alleging disability as of January 1, 2011. (Tr. 115-16, 264-71). The Administration denied Plaintiff's claim initially and upon reconsideration. A hearing was held on May 2, 2019, at which Plaintiff and vocational expert, Robert Breslin testified. (Tr.40-74). After the hearing, Plaintiff amended his alleged onset date to November 18, 2014. (Tr. 291). Thereafter, the ALJ issued a decision on June 5, 2019,

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

denying Plaintiff's applications (Tr. 12-33). Plaintiff now seeks judicial review of the denial of his application for benefits.

At the time of the hearing Plaintiff was a forty-nine year old male with a 12th grade education. (Tr. 93). He has past relevant work as a sweeper and apprentice boiler maker, last working in 2014. (Tr. 17, 30). Plaintiff alleges disability based primarily upon osteoarthritis of the knees and bipolar disorder.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "severe dysfunction major joint (knees) osteoarthritis, pain, disorders of the spine, obesity, depression, bipolar disorder, anxiety and substance addiction disorder (alcohol and opiate)." (Tr. 17). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform light work subject to the following limitations:

> He is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently. He is able to stand and/or walk for up to 6 hours per 8-hour day and sit for 6 hours per 8-hour day with normal breaks. He can occasionally climb ramps and stairs. He can never climb ladders, ropes, or scaffold. He can frequently stoop. He can occasionally kneel. He can frequently crouch. He can occasionally crawl. He must avoid concentrated exposure to extreme cold, extreme heat and humidity. He must avoid hazards such as unprotected heights and operating hazardous materials. He can understand, remember and carry out simple, repetitive instructions; can maintain concentration, attention and sustain persistence and pace for 2-hour intervals in an 8-hour workday to complete tasks with no fast pace work or high production demands; is able to interact with the public, co-workers and supervisors occasionally with work that does not require arbitration or persuasion; can perform work with things rather than people; and can adapt to routine work setting with no fast pace or high production quota demands with major changes explained in advance.

(Tr. 20). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, limited education and work experience, and the RFC, the ALJ concluded that Plaintiff could perform his past relevant work as a sweeper and apprentice boiler maker. (Tr. 31) In the alternative, the ALJ further determined that he could also perform a significant number of unskilled jobs in the regional and national economy, including cleaner housekeeper, merchandise maker and cafeteria attendant. (Tr. 32). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) improperly weighing the opinion evidence and (2) failing to properly articulate her findings with respect to the consultative examiners' opinions. Upon close analysis, I conclude that Plaintiff's arguments are not well-taken.

II.     Analysis

A. **Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by

substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*,

459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is supported by Substantial Evidence**

*1. Opinion Evidence*

Plaintiff argues that the ALJ did not properly weight the opinion evidence in accordance with Agency Regulations. Specifically, Plaintiff argues that the ALJ failed to give controlling weight to the findings of Plaintiff's treating sources, Dr. Shapiro and Nurse Practitioner Owens. Plaintiff's contention lacks merit.

Agency regulations provide that the ALJ is required to consider every medical opinion in the record and weigh each according to factors like the nature of the relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c)(1)-(6). A treating doctor's opinion generally is entitled to more weight, and an ALJ must give good reasons for the weight given a treating doctor's opinion. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). An ALJ may discount a doctor's opinion, including a treating doctor's opinion, when the doctor fails to explain or provide objective medical evidence to support his or her opinion or if the doctor's opinion is inconsistent with the record as a whole. See 20

5

C.F.R. §§ 404.1527(c), 416.927(c); *Walters*, 127 F.3d at 529-30. In addition, although doctors' opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC. See 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(3), 404.1546(c), 416.927(d)(2), 416.945(a)(3), 416.946(c); SSR 96-5p, 61 Fed. Reg. at 34,472; *Webb*, 368 F.3d at 633; Rudd, 531 F. App'x at 728; *Coldiron*, 391 F. App'x at 439.

*A. Dr. Shapiro*

Here, the record establishes that Plaintiff has a long history of bilateral knee and back pain for which he has treated with Dr. Carl Shapiro, a physical medicine and rehabilitation physician and his nurse practitioner Marian Wolfe, CNP (Tr. 538-564). On November 18, 2014, Dr. Shapiro completed a functional capacity letter noting Plaintiff's diagnosis as right knee arthritis, left carpal tunnel syndrome, lumbar spondylosis and chronic pain. (Tr. 519). Dr. Shapiro opined that Plaintiff was unable to work. Id. In an office note from this same date, Dr. Shapiro noted Plaintiff had arthritis in his knees, symptomatic carpal tunnel syndrome and a lot of lumbar spondylosis but insurance had been a real issue for him. (Tr. 520, 537). H

In a follow up visit a few weeks later, Plaintiff reported pain levels of 9/10 and felt he was becoming intolerant to the oxycodone (Tr. 536). Plaintiff was seen again on December 30, 2014 for refills of his oxycodone and alprazolam and reported pain levels of 8/10. (Tr. 535). Plaintiff was seen by Nurse Wolfe in Dr. Shapiro's office again in April and May 2015 reporting high pain levels, 9-10/10. (Tr. 533-534). Plaintiff was without insurance, but he was instructed to continue taking oxycodone, use ice and Tylenol. Id

6

On April 14, 2017, Dr. Shapiro completed a basic medical form for Ohio Department of Job and Family Services. He noted Plaintiff's height at 5'10" and weight at 330 pounds and exam findings of limited range of motion in both knees and lumbar. (Tr. 918). Dr. Shapiro opined that claimant could stand/walk less than one hour without interruption and sit less than two hours without interruption and could lift/carry up 20lbs. (Tr. 919).

In May 2017, Plaintiff reported 8/10 pain and Dr. Shapiro found "significant crepitus" and pain in the left knee. (Tr. 975). On follow up, Plaintiff lost ten pounds and reported some improvement in knee pain. (Tr. 979). In July 2017, Dr. Shapiro noted Plaintiff was moving a little better but still had quite a bit of pain. He renewed his alprazolam and oxycodone. (Tr. 977). In August 2017, Dr. Shapiro noted that Plaintiff was applying for disability and "I fully support this." (Tr. 976).  In November 2017, Dr. Shapiro noted that claimant had lost weight but "he is still not able to work in a competitive workplace. He is probably going to need knee replacements bilaterally" and evaluation for lumbar spine problems." (Tr. 1242).  He continued to see Dr. Shapiro monthly for pain medication refills.

In formulating his RFC, the ALJ assigned "limited weight" to Dr. Shapiro's RFC. (Tr. 27). The ALJ wrote that "Dr. Shapiro's RFC assessment is merely a check-the-box type form and is unsupported by the medical evidence, as is his assessment that the Plaintiff would be unable to work." (Tr. 28). The ALJ further noted that exams in 2017, 2018 and 2019 did not show problems with gait or station and no new problems with coordination, deep tendon reflex or motor/sensory functioning. Id.  Thus, the ALJ

determined that the medical records, including Dr. Shapiro's own records, do not include objective medical findings or other evidence to support the extreme limitations in Dr. Shapiro's opinions. (Tr. 18-30). See 20 C.F.R. §§ 404.1527(c)(3), (c)(4), 416.927(c)(3), (c)(4); Walters, 127 F.3d at 529-30. Dr. Shapiro offered little explanation for his opinions and failed to provide objective medical findings to support his opinions, which alone is a sufficient reason for the ALJ to give limited weight to Dr. Shapiro's opinions. See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3); *Walters*, 127 F.3d at 529-30. Dr. Shapiro noted Plaintiff's diagnoses and subjective complaints in rendering his opinions. However, as noted by the Commissioner, diagnoses do not establish limitations, and a claimant's subjective complaints are not a sufficient basis for an opinion (Tr. 519, 918-19). See 20 C.F.R. §§ 404.1527(c), 416.927(c); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012).

In light of the foregoing, the undersigned finds that the ALJ properly evaluated Dr. Shapiro's findings in accordance with Agency regulations and controlling law.

*B. Nurse Owens*

Plaintiff argues next that the ALJ failed to properly weigh the opinion of Kathleen Owens, a nurse practitioner. Notably, Plaintiff presented to Nurse Owens at Talbert House in June 2017 for psychological evaluation and was started on risperidone. (Tr. 1162, 1165). On follow up two weeks later, Plaintiff had paranoid thinking and Risperdal was added. (Tr. 1163). Then in September 2017, in a follow up with Nurse Owens, Plaintiff continued to have auditory hallucinations, anxious mood/affect and fair insight and judgment. (Tr. 1149). He was continued on Zoloft and risperidone and instructed to follow up in one to two months. (Tr. 1149-1150).

Plaintiff returned to Nurse Owens in February 2018 and reported he had lost his Medicaid insurance. (Tr. 1113). Plaintiff rated his depression as an 8/10 and anxiety a 9/10 and report auditory hallucinations. Id. On mental status exam, Nurse Owens noted positive auditory and paranoid perception, anxious mood/affect and limited insight and judgment (Tr. 1113). Plaintiff was continued on risperidone, Prozac and Vistaril. (Tr. 1114).  Nurse Owens completed a mental impairment questionnaire in April 2018. She noted clinical findings of labile moods, easily fatigued, agitated, anxious distress, episodes of depersonalization, and frequent and paranoid auditory hallucinations. (Tr. 1252). Nurse Owens opined Plaintiff was severely limited in the ability to sustain concentration and persistence and interact socially. (Tr. 1253-1254). She concluded that Plaintiff would likely miss more than four days per month. (Tr. 1255).

The ALJ assigned limited or only some weight to the opinions of Nurse Owens. (Tr. 28-29, 963-68, 1252-56, 1259). In so concluding, the ALJ explained that Nurse Owens was not an acceptable medical source and was instead an "other" source. (Tr. 28). See 20 C.F.R. §§ 404.1502, 416.902; SSR 06-3p, 71 Fed. Reg. 45,593-03, 45,594 (Aug. 9, 2006).  As noted by the Commissioner, because other sources are not acceptable medical sources, their opinions are not medical opinions and are not entitled to any special significance or consideration. See 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); SSR 06-3p, 71 Fed. Reg. at 45,594. Because Nurse Owens was not an acceptable medical source, she could not be considered a treating source. See 20 C.F.R. §§ 404.1502, 416.902; SSR 06-3p, 71 Fed. Reg. at 45,594. Thus, the ALJ was not required to articulate specific reasons for discounting Nurse Owens's opinions. See SSR 06-3p, 71 Fed. Reg. at 45,596; compare 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (requiring

9

ALJs to provide "good reasons" for the weight assigned to opinions from treating acceptable medical sources).

Nonetheless, the ALJ properly evaluated Nurse Owens opinions. In this regard, the ALJ found that Nurse Owen's assessment appears somewhat extreme in light of the numerous normal mental status examinations of record and the claimants own report of functioning. (Tr. 28). As noted by the Commissioner, the records from the doctors and other medical professionals who examined and treated Plaintiff, as discussed by the ALJ, do not include objective medical findings or other evidence indicating that she was as limited as CNP Owens opined. See SSR 06-3p, 71 Fed. Reg. at 45,595-96. Dr. Shapiro and NP Wolfe repeatedly noted that Plaintiff was alert, oriented, and cooperative and that his mood and affect were appropriate. (Tr. 520, 523, 526-36, 974-79, 1228, 1230, 1233, 1236, 1238, 1240, 1242, 1244, 1246, 1248).

Additionally, medical records from the Hamilton County Justice Center show that Plaintiff was alert and oriented to person, place, time, and situation; his memory was unimpaired; he was well groomed; his demeanor was spontaneous; his psychomotor activity was normal; his speech was appropriate or soft; his mood was euthymic; his affect was appropriate; his thought process was circumstantial; his thought content was appropriate; he rarely alleged delusions of hallucinations; his insight and judgment were fair; and he denied suicidal or homicidal ideation. (Tr. 652, 763, 767-77, 784-87, 793-96, 802-04, 807-09, 811-12, 821-22, 826-27, 851-54, 858-60). The mental status findings of Dr. Wright and other examiners at Mercy Health were similarly unremarkable, as they noted that Plaintiff had a normal mood and affect and his behavior was normal. (Tr. 891, 895, 950, 1196, 1203, 1330, 1339). The ALJ also noted that Nurse Owens' opinions were

inconsistent with the March 2019 treatment records noting that Plaintiff presented stated he needed a release back to work. (Tr. 29).

Accordingly based on the evidence outlined above, the undersigned finds that the ALJ properly evaluated Nurse Owen's findings and her decision is substantially supported in this regard.

*2. Consultative Examiners Opinions*

Plaintiff further asserts that the ALJ failed to properly articulate his rationale for the assessing the findings of the consultative examiners Drs. Chiappone and Dr. Schmidtgossling. Plaintiff's contention lacks merit.

Here, the record, indicates that in May 2017, Plaintiff presented to David Chiappone, Ph.D. for a psychological evaluation at the request of the state agency. Dr. Chiappone opined that Plaintiff would be able to understand, remember and follow instruction for a one-step task but not a complex task; would have some difficulty with concentration and persisting at a reasonable pace; would have difficulty dealing with supervisors, coworkers and bosses and would have some difficulty dealing with normal pressures in a competitive work setting. (Tr. 932-933). He diagnosed unspecified depressive disorder, unspecified anxiety disorder; unspecified personality disorder with cluster B features and alcohol use disorder, in remission (Tr. 933).

A second request by the administration was made for a psychological evaluation to be performed, which was completed by Dr. Nancy Schmidtgoessling in September 2017. Dr. Schmidtgoessling determined that Plaintiff was a less than reliable informant because he was not very articulate about his mental health and gave discrepant information versus what he told Dr. Chiappone (Tr. 991). She diagnosed Plaintiff with

11

unspecified depressive disorder; unspecified anxiety disorder, unspecified alcohol related disorder, in remission, personality disorder with anti-social and paranoid traits and unspecified psychotic disorder (Tr. 992-993). Dr. Schmidtgoessling opined that Plaintiff's reports of paranoia, delusional thoughts, anxiety, depression and anger control would negatively impact his ability to tolerate normal stress of a job. (Tr. 992).

In assessing Plaintiff's mental RFC, the ALJ gave some weight to their reports and opinions because they had examined Plaintiff. (Tr. 27). The ALJ noted their opinions were generally consistent with examination findings, but their opinions were somewhat vague (Tr. 27). See 20 C.F.R. §§ 404.1527(c)(3), (c)(4), 416.927(c)(3), (c)(4); *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019). The ALJ also properly noted inconsistencies between what Plaintiff told Dr. Chiappone and his hearing testimony. (Tr. 30, 44-66, 924-30).

The record provides substantial evidence to support the ALJ's assessment of Plaintiff's RFC, and Plaintiff failed to prove that he had additional limitations. The Commissioner's findings must stand if substantial evidence supports them, regardless of whether the reviewing court would resolve conflicts in the evidence differently. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek,* 139 S. Ct. at 1154; see

*Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726 (6th Cir. 2004) (stating "substantial evidence is a fairly low bar").

The ALJ's findings in this case were well within the zone of reasonable choices. See *McClanahan*, 474 F.3d at 833; accord *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess."); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("As long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."). Substantial evidence supports the ALJ's findings and her conclusion that Plaintiff was not disabled within the meaning of the Social Security Act.

### III. Conclusion

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and should be **AFFIRMED**, and that this case be **CLOSED**.

 *s/ Stephanie K. Bowman*
 Stephanie K. Bowman
 United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| GEORGE C. | Case No. 1:20-cv-607 |
| Plaintiff, | Dlott, J. |
| v. | Bowman, M.J. |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).